IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| JAMES HAVARD, | : | |
|     Plaintiff | : | |
| | : | |
|     v. | : | CIV. NO. AMD 05-614 |
| | : | |
| PERDUE FARMS, INC., | : | |
|     Defendant | : | |

...o0o...

MEMORANDUM OPINION

Plaintiff, James Havard, instituted this one-count personal injury action against defendant Perdue Farms, Inc., seeking damages for an incident which occurred at a Perdue facility in Virginia. Jurisdiction is premised on diversity of citizenship. Discovery has concluded and now pending is defendant's alternative dispositive motion, which seeks dismissal with prejudice. No hearing is needed. The motion shall be granted for the reasons stated within.

I.

The material facts, in the light most favorable to plaintiff, may be summarized as follows. At all times relevant to his claim, plaintiff, a citizen of Delaware, was an employee (a welder) for non-party General Refrigeration Company, a Delaware corporation which performed work throughout the Mid-Atlantic region for companies in the food processing industry. Defendant is a Maryland corporation which grows, processes, and markets food items, including chickens. Defendant operates a facility in Accomac, Virginia, described as a "prepackage and ice package plant."

In March 2003, not long after he had been hired by General Refrigeration, plaintiff traveled to the Accomac facility with other employees of General Refrigeration in connection with the installation by General Refrigeration of a new ice maker, compressor and condenser. While at the Accomac facility, General Refrigeration officials undertook to assist Perdue officials in a task separate from the other contracted work, namely, the lifting and repositioning of several large pieces of sheet metal, measuring approximately four-by-eight feet by ½ inch thick, from among a stack of such material that was customarily stored in a grassy area near a parked "fan trailer," part of the equipment used in Perdue's chicken processing operations. The fan trailer had begun to sink into the soft ground and the sheet metal was used to support it.

General Refrigeration had leased a large crane for its use in the performance of its contract with Perdue. As mentioned above, it agreed to deploy some of its employees, together with certain Perdue employees and the crane operator, to lift and reposition the sheet metal. Havard suffered crush injuries to his hand as he assisted in this operation, *viz*., as he helped load the sheet metal onto a fork lift device attendant to the repositioning of the sheet metal. Havard has received workers' compensation benefits under Delaware law through his employment with General Refrigeration. He filed this action against Perdue as a third party tortfeasor.

II.

Defendant's pending dispositive motion has been styled "Defendant's Rule 12(b)(1)

motion to dismiss or, in the alternative, Rule 56(c) for Summary Judgment." In its motion, defendant seeks application of the Virginia Workers' Compensation Act (sometimes hereinafter "the Virginia Act") and, specifically, it contends that, as a matter of fact and/or of law, it is entitled to immunity under the Act as Havard's "statutory employer."

I will first explain why I believe the motion must properly be treated as one for summary judgment under Fed.R.Civ.P. 56. Defendant insists that a "statutory employer" defense under the Virginia Act may be asserted as an attack on a federal district court's subject matter jurisdiction pursuant to Fed.R.Civ.P. 12(b)(1) in a case filed under the diversity of citizenship statute. Indeed, the Fourth Circuit seemingly has so held in an unreported opinion on appeal from this court. *Banks v. Virginia Elec. & Power Co.*, 2000 WL 191851 (4th Cir. Feb. 17, 2000), *cert. denied*, 531 U.S. 815 (2000). In so holding, however, the Fourth Circuit relied on *Richmond, Fredericksburg & Potomac R. Co. v. United States*, 945 F.2d 765 (4th Cir. 1991), *cert. denied*, 503 U.S. 984 (1992). But *Richmond, Fredericksburg & Potomac R. Co.* was a case in which the *United States* challenged a district court's subject matter jurisdiction on the basis that the claim against it was barred by limitations under the Quiet Title Act, and that therefore its limited, conditional waiver of sovereign immunity deprived the court of subject matter jurisdiction. *Id*. at 768-69.[1] The Supreme Court has often reiterated that a challenge to a claim by the United States

---

[1]A subsequent reported opinion of the Fourth Circuit, *Evans v. B.F. Perkins Co., a Div. of Standex Intern. Corp.*, 166 F.3d 642 (4th Cir.1999), similarly cited *Richmond, Fredericksburg & Potomac R. Co.* for the proposition that the statutory employer bar to personal injury actions
(continued...)

asserted against it, resting on sovereign immunity, is a jurisdictional challenge. *E.g., United States v. Mitchell,* 463 U.S. 206, 212 (1983) (holding that "the Tucker Act effects a waiver of sovereign immunity" and that "the existence of consent [to be sued] is a prerequisite for jurisdiction"); *see also Williams v. United States,* 50 F.3d 299, 304 (4th Cir.1995). *Richmond, Fredericksburg & Potomac R. Co.* hardly seems to be sound authority for the proposition that a claim properly arising under the diversity statute between private parties may be defeated *jurisdictionally*.

The notion that the "statutory employer" issue is "jurisdictional" derives from the an incident of Virginia law, recognized in *Lucas v. Biller*, 204 Va. 309, 130 S.E.2d 582 (1963), that only the Virginia Industrial Commission, and not the state's common law courts, has

---

[1](...continued)
implicating the Virginia Act may be asserted as a challenge to a federal district court's subject matter jurisdiction in a diversity of citizenship case. The concern seems to be that under Fed.R.Civ.P. 12(b)(1), a district court may consider matters outside the pleadings and make "findings" on the jurisdictional issue, whereas Rule 12(b)(6) (like Rule 56) entitle a plaintiff to the benefit of favorable inferences, thereby permitting the case to proceed into discovery. *See generally Williams v. United States,* 50 F.3d 299, 304 (4th Cir.1995). (Indeed, Perdue made a prediscovery motion to dismiss in this case, asserting a lack of subject matter jurisdiction, which I summarily denied.) This practice, in turn, appears to be a way to avoid jury factfinding on the ultimate issue of whether the elements of a statutory employer defense have been made out. But the law is settled that where jurisdictional facts are intertwined with legal issues material to the merits of a dispute, the Seventh Amendment right to a jury trial requires that such disputes be submitted to the jury. *See, e.g.*, *In re Mut. Fund Investment Litigation*, --- F.Supp.2d ----, 2005 WL 3299357, *2 (D.Md., Dec. 6, 2005) ("When the jurisdictional facts are intertwined with questions of law, however, it may be appropriate to resolve the entire factual dispute at a later proceeding on the merits.") (citing *United States v. North Carolina,* 180 F.3d 574, 580-81 (4th Cir.1999); *Adams v. Bain,* 697 F.2d 1213, 1219 (4th Cir.1982); *Bryant v. Clevelands, Inc.,* 193 F.R.D. 486, 488 (E.D.Va.2000)).

Under the circumstances here, I need not further explore this question, as I conclude that, as a matter of law, no reasonable juror could rationally conclude that Perdue was other than Havard's statutory employer under the Virginia Act.

"subject matter jurisdiction" over a claim against a statutory employer. I do not understand federal "case or controversy" requirements (let alone the diversity of citizenship statute) to import such Virginia procedural law into its jurisprudence. Accordingly, I shall treat Perdue's motion as a motion for summary judgment. *See Rice v. VVP America, Inc.*, 137 F.Supp.2d 658 (E.D.Va.2001) (granting defendant's motion for summary judgment on the issue of "statutory employer").

Pursuant to Fed. R. Civ. P. 56 (c), summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 247 (1986). A fact is material for purposes of summary judgment, if when applied to the substantive law, it affects the outcome of the litigation. *Id*. at 248. Summary judgment is also appropriate when a party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

A party opposing a properly supported motion for summary judgment bears the burden of establishing the existence of a genuine issue of material fact. *Anderson*, 477 U.S. at 248-49. "When a motion for summary judgment is made and supported as provided in [Rule 56], an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavit or as otherwise provided in

[Rule 56] must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e); *see Celotex Corp.*, 477 U.S. at 324; *Anderson*, 477 U.S. at 252; *Shealy v. Winston*, 929 F.2d 1009, 1012 (4th Cir. 1991). Of course, the facts, as well as justifiable inferences to be drawn therefrom, must be viewed in the light most favorable to the nonmoving party. *Matushita Elec. Indust. Co v. Zenith Radio Corp.*, 475 U.S. 574, 587-88 (1986). The court, however, has an affirmative obligation to prevent factually unsupported claims and defenses from proceeding to trial. *Felty v. Graves-Humphreys Co.*, 818 F.2d 1126, 1128 (4th Cir. 1987).

### III.

On the merits, I have no hesitation in concluding that (1) Virginia's Workers' Compensation Act applies to this case; (2) Perdue was the plaintiff's statutory employer under the Act; and therefore, (3) plaintiff's claim is barred.

### A.

It is well settled that in a diversity case, a federal district court applies the choice of law principles of the forum. *Limbach Co., LLC v. Zurich Am. Ins. Co.*, 396 F.3d 358, 361 (4th Cir. 2005) (citing *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496-97 (1941)). In cases sounding in tort such as the present one, Maryland applies the venerable maxim of *lex loci delicti*. *Hauch v. Connor,* 295 Md. 120, 123, 453 A.2d 1207, 1209 (1983) ("The rule of *lex loci delicti* is well established in Maryland."); *see Wells v. Liddy*, 186 F.3d 505, 523 (4th Cir.1999), *cert. denied*, 528 U.S. 1118 (2000) ("For tort claims, Maryland adheres to

the First Restatement of Conflict of Laws rule, *lex loci delicti commissi,* or the law of the place of the harm, to determine the applicable substantive law."). Maryland's Court of Appeals has recognized a limited exception to the rule of *lex loci delicti* in respect to personal injury claims which implicate workers' compensation statutes. Specifically, in *Hauch,* the court held that a "greater interest" test would apply where application of another state's workers' compensation statute would frustrate an important public policy of Maryland.

In *Hauch*, the court declined to apply the Delaware workers' compensation act to bar a personal injury action against a co-employee. Although the motor vehicle accident giving rise to the claims in that case occurred in Delaware, the suit was brought in Maryland against a co-employee driver by the injured passengers. Both the driver and the passengers had received benefits under the Maryland workers' compensation act, and all parties were citizens of, and were employed in, Maryland. They had been in Delaware in the course of their employment for a joint employer at the time of the accident.

Although Delaware's workers' compensation law prohibited suits between co-employees, Maryland's workers' compensation act, as interpreted by the Maryland Court of Appeals, allowed such suits. In refusing to apply the Delaware statute to bar the co-employee claims brought in a Maryland trial court, the Court of Appeals reasoned as follows, in material part:

> [M]any courts recognize that workmen's compensation law conflict issues present distinct policy questions and should not be treated as tort or

> contract matters for choice of law purposes. We agree with this approach.
>
> * * *
>
> [In] *Hutzell v. Boyer,* 252 Md. 227, 249 A.2d 449 (1969), we recognized that the choice of law issue in co-employee actions was not simply a matter of tort conflict of laws, and that Maryland public policy was an important consideration. In *Hutzell* an employee brought an action in Maryland against a co-employee to recover for injuries sustained when he was a passenger in a truck driven by the co-employee. Both parties were residents of Maryland but were employed in Virginia. They were returning to their Maryland homes from the job site in Virginia when the truck went off the road in Maryland and struck a utility pole. As in the instant cases, the foreign (Virginia) workmen's compensation statute barred co-employee actions. This Court, however, held that the Maryland statute, permitting such actions, governed the case.
>
> While the Court in *Hutzell* did refer to the *lex loci delicti* rule and the fact that the collision occurred in Maryland, this was not the principal basis of the opinion . . . . [T]he principal basis for the decision in *Hutzell* was Maryland public policy. In that case, the defendant argued that the Maryland allowance of co-employee suits did not represent ""a formulated or defined public policy against granting immunity to fellow employees from tort action, as provided in the Virginia statute," *Hutzell v. Boyer, supra,* 252 Md. at 233, 249 A.2d 449. This Court's response was that the defendant's ""argument has not persuaded us."" *Ibid.* The Court expressly disagreed with the New Jersey case of *Stacy v. Greenberg,* 9 N.J. 390, 88 A.2d 619 (1952), which had attached little importance to the policy of the forum state in allowing co-employee suits. The *Hutzell* opinion stated that ""we are unable to make a similar finding with regard to . . . the public policy of Maryland."" 252 Md. at 236, 249 A.2d 449.

*Hauch*, 295 Md. at 127, 132-33, 453 A.2d at 1211, 1213-14 (footnotes omitted; alterations added). Notably, in *Hauch*, the Court of Appeals implied, albeit only in dicta, its belief that the statutory employer defense did not conflict with Maryland's public policy. *Id*. at 127-28; 453 A.2d at 1211-12.

In this case, both Havard and his general employer, General Refrigeration, are citizens of Delaware, and Havard received benefits under the Delaware workers' compensation

statute. However, the accident out of which the claim arises occurred in Virginia. In light of *Hauch*, what is most significant is that the Maryland workers' compensation act is not implicated; nor is Maryland's general tort law involved in this case. As defendant contends, the sole connection Maryland has to this case is the fact that Perdue is amenable to suit in Maryland. Thus, Maryland has no interest, substantial or otherwise, beyond the mere provision of its courts to adjudicate claims against any proper defendant joined in this case. Contrary to Havard's contention, Delaware likewise has no interest in this case such that a Maryland state court would apply Delaware general law of negligence or its workers' compensation act. Accordingly, the law of Virginia, including its workers' compensation act, applies here, just as it would were this case pending in a Maryland state court. *Limbach Co., LLC*, 396 F.3d at 361.

B.

The above conclusion is largely dispositive of the remaining issues. Under the Virginia Act, a statutory employer is immune from suit. As relevant in the case at bar, the Virginia Act ascribes "statutory employer" status to:

> An owner . . . when it "undertakes to perform ... any work which is part of [its] trade, business or occupation and contracts with any other person ... for the ... performance by or under such [person] of the whole or any part of the work undertaken by such owner."

*Cinnamon v. International Business Machines Corp.*, 238 Va. 471, 474-75, 384 S.E.2d 618, 619 (1989)(citation omitted).

In this case, in respect to the repositioning of the sheet metal to support its fan trailers,

Perdue was an "owner" which, indisputably, "undert[ook] to perform . . . work which is part of [its] trade, business or occupation and contract[ed] with [General Refrigeration] . . . for the . . . performance by [General Refrigeration] . . .of . . . part of the work undertaken by such owner." There is binding and persuasive authority that the focus must be on the precise work being done at the time of the injury. *See Rice v. VVP America, Inc.*, 137 F.Supp.2d 658 (E.D.Va.2001)("Based on the relevant case law, however, the Court is of the opinion that the proper focus is on Rice's activity at the precise time of the accident.")(collecting cases). There simply is no genuine dispute that the work in which Havard was engaged at the time he suffered his unfortunate injury was part of the ordinary work of Perdue's employees. Thus, as a matter of law, Havard was the "statutory employee" of Perdue and Perdue was Havard's "statutory employer" entitled to immunity as provided for in the Virginia Act.

Havard makes a series of unpersuasive arguments to counter the undisputed facts bearing on the statutory employer issue. Plainly, the fact that neither General Refrigeration nor Perdue owned the crane which was employed in the repositioning enterprise is of no moment. Likewise, the mere fact that the repositioning of the sheet metal was incidental to the "trade, business or occupation" of Perdue, rather than some other core function, is insufficient to vitiate the immunity accorded under the Virginia Act. Havard's citation to so-called "mere delivery" cases is similarly unavailing. Under no construction of the undisputed facts could a reasonable jury conclude that the plaintiff was engaged in "delivery" activity at the time of the accident in which he suffered his injuries.

Finally, there is no basis on which to accept Havard's contention that recognition of the statutory employer defense under the circumstances of this case would be violative of any public policy of Maryland. Indeed, Maryland's workers' compensation act, like Virginia's and apparently every other state's, recognizes the statutory employer defense to personal injury actions. *Cf. Hauch*, 295 Md. at 127-28, 453 A.2d at 1211-12. There simply is no conflict between statutes which permit recovery over against third party tortfeasors by injured workers and their general employers which provide workers' compensation benefits, on the one hand, and statutes which, concomitantly, prohibit actions against the set of ostensible third party tortfeasors who, under the relevant workers' compensation act, are "statutory employers."

C.

For the reasons set forth above, Havard's action against Perdue is barred by the Virginia Workers' Compensation Act.

IV.

For the reasons set forth, the motion for summary judgment shall be granted. An Order follows.[2]

                                                          /s/
                                                        ANDRE M. DAVIS
                                                        UNITED STATES DISTRICT JUDGE

---

[2] For the reasons set forth in this Memorandum Opinion, I shall deny Havard's request to certify certain questions to the Maryland Court of Appeals.